THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
KEITH STAUB
Assistant United States Attorney
California Bar Number: 137909
ANOIEL KHORSHID
Assistant United States Attorney
California Bar Number: 223912
Room 7516 Federal Building
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-7423 / 894-6086
Facsimile: (213) 894-7819
Email: : Keith.Staub@usdoj.gov / Anoiel.Khorshid@usdoj.gov

Attorneys for Defendant United States of America.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| YANIRA CASTANEDA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | Case No. CV 07-07241 DDP (JCx)<br><br>**DEFENDANT UNITED STATES OF AMERICA'S ANSWER TO PLAINTIFFS' FOURTH AMENDED COMPLAINT**<br><br>Honorable Dean D. Pregerson |

COMES NOW Defendant UNITED STATES OF AMERICA ("United States") in the above-styled action by and through undersigned counsel, the United States Attorney for the Central District Court of California, file this Answer to the Fourth Amended Complaint as follows:

Answering those allegations contained of the numbered paragraphs of the Fourth Amended Complaint, the United States responds as follows:

1. In response to Paragraph 1, the United States admits that Castaneda was formerly detained in United States Customs and Enforcement ("ICE") custody and

that he developed penile cancer, had his penis amputated and died on or about February 16, 2008. The United States denies the remaining allegations in Paragraph 1.

2. In response to Paragraph 2, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

3. In response to Paragraph 3, the United States lacks sufficient information to either admit or deny the allegations in this Paragraph and therefore denies these allegations.

4. In response to Paragraph 4, the United States admits that Castaneda was detained in ICE custody from about March 27, 2006 to about February 5, 2007 and that federal medical providers documented that the lesion on Castaneda's penis might be cancerous, recommended a biopsy, and recognized the need for diagnosis and treatment. In response to the last sentence in Paragraph 4, the United States admits that records indicates that Castaneda stated he experienced pain; bleeding, draining and discharge, and a foul odor from his penis; swelling in his penis; and difficult in urinating. The United States denies the remaining allegations in Paragraph 4.

5. In response to Paragraph 5, the United States admits that medical employees scheduled a biopsy and that Castaneda was released from ICE custody prior to Castaneda receiving that biopsy. The United States denies the remaining allegations in Paragraph 5.

6. In response to Paragraph 6, the United States admits that records produced by Castaneda indicate that Castaneda's carcinoma of the penis was diagnosed at Harbor-UCLA Medical Center after Castaneda's release from ICE custody. The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

7. In response to Paragraph 7, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the

United States denies these allegations.

8. In response to Paragraph 8, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States admits these allegations except lacks information regarding Plaintiff Yanira Castaneda's residence.

9. In response to Paragraph 9, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies the remaining allegations in Paragraph 9.

10. In response to Paragraph 10, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

11. In response to Paragraph 11, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

12. In response to Paragraph 12, the United States admits that Castaneda filed a timely federal government tort claim with the United States. The remaining allegations contain jurisdictional or conclusory statements that do not require a response. To the extent a response is necessary, the United States denies these allegations.

13. In response to Paragraph 13, the United States admits that at all times alleged in the Complaint as to the United States, Castaneda was detained in the custody of the federal government and has been informed by Castaneda's counsel that Castaneda passed away on February 16, 2008. The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

14. In response to Paragraph 14, the United States lacks sufficient information to either admit or deny the allegations in this Paragraph and therefore denies these allegations.

15. In response to Paragraph 15, the United States lacks sufficient information to either admit or deny the allegations in this Paragraph and therefore denies these allegations.

16. In response to Paragraph 16, the United States lacks sufficient information to either admit or deny the allegations in this Paragraph and therefore denies these allegations.

17. The United States admits the allegations in Paragraph 17 with the correction that the Division of Immigration Health Services is incorrectly named as the Department of Immigration Health Services.

18. The United States admits the allegations in Paragraph 18.

19. In response to Paragraph 19, the United States admits that at times relevant to the allegations in the Complaint, DIHS provided health care services to immigrants detained by ICE and denies all remaining allegations.

20. In response to Paragraph 20, the United States admits that Julie Myers was the Assistant Secretary of ICE during times relevant to the allegations in the Complaint and denies all remaining allegations.

21. In response to Paragraph 21, the United States admits that Michael Chertoff was the Secretary of DHS during times relevant to the allegations in the Complaint and denies all remaining allegations.

22. In response to Paragraph 22, the United States lacks sufficient information to either admit or deny the allegations in this Paragraph and therefore denies these allegations.

23. In response to Paragraph 23, the United States admits that George Molinar was employed by ICE at the times alleged against the United States. The United States also admits that George Molinar is being sued in his individual capacity. The United States denies the remaining allegations in Paragraph 19.

24. In response to Paragraph 24, the United States admits that Chris Henneford was employed by DIHS as the Health Services Administrator of the San

Pedro Service Processing Center at the times alleged against the United States. The United States also admits that Chris Henneford is being sued in his individual capacity. The United States denies the remaining allegations in Paragraph 20.

25. In response to Paragraph 25, the United States admits that Gene Migliaccio was the Director of DIHS at the times alleged against the United States. The United States further admits that Gene Migliaccio is being sued in his individual capacity. The United States denies the remaining allegations in Paragraph 25.

26. In response to Paragraph 26, the United States admits that Timothy Shack, M.D., was Director of Medical Services for DIHS at the times alleged against the United States. The United States further admits that Timothy Shack, M.D., is being sued in his individual capacity. The United States denies the remaining allegations in Paragraph 26.

27. In response to Paragraph 27, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

28. In response to Paragraph 28, the United States admits that Esther Hui, M.D., was a Medical Doctor at SDCF at the times alleged against the United States. The United States further admits that Esther Hui, M.D., is being sued in her individual capacity. The United States denies the remaining allegations in Paragraph 28.

29. In response to Paragraph 29, the United States admits that Stephen Gonsalves was the Health Services Administrator at SDCF at the times alleged against the United States. The United States further admits that Stephen Gonsalves is being sued in his individual capacity. The United States denies the remaining allegations in Paragraph 29.

30. In response to Paragraph 30, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

31. In response to Paragraph 31, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

32. In response to Paragraph 32, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

33. In response to Paragraph 33, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

34. In response to Paragraph 34, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

35. In response to Paragraph 35, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

36. In response to Paragraph 36, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

37. In response to Paragraph 37, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

38. In response to Paragraph 38, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

39. In response to Paragraph 39, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

40. In response to Paragraph 40, the United States lacks sufficient

information to either admit or deny these allegations and therefore denies these allegations.

41. In response to Paragraph 41, the United States admits that a Chronological Record of Medical Care dated March 28, 2006 indicates that Castaneda was seen by Physician's Assistant Anthony Walker ("Physician's Assistant Walker") on March 28, 2006, that Physician's Assistant Walker noted that Castaneda had a history of genital warts, and noted that "urology consult asap [] request for biopsy." The remaining allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

42. In response to Paragraph 42, the United States admits that a Chronological Record of Medical Care dated March 28, 2006 indicates that Castaneda was seen by Physician's Assistant Anthony Walker ("Physician's Assistant Walker") on March 28, 2006, that Physician's Assistant Walker noted that Castaneda had a history of genital warts, and noted that "urology consult asap [] request for biopsy."

43. In response to Paragraph 43, admits that a record dated April 11, 2006 indicates that Castaneda was seen by Physician's Assistant Walker on April 11, 2006, that Physician's Assistant Walker noted that Castaneda had "Penial lesion need r/o CA," and that "FMHx mother deceased PANCREATIC CA at age 39."

44. In response to Paragraph 44, the United States admits that a record dated April 28, 2006 indicates that Castaneda was seen by Physician's Assistant Walker on April 28, 2006, that Physician's Assistant Walker noted that the "Lesion on penis is more macerated at the glans and emits a foul odor," and that Castaneda "Also states lesion on penis is smelling worse and leaking some drainage."

45. In response to Paragraph 45, the allegations contained in this Paragraph

constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

46. In response to Paragraph 46, the United States admits that a record dated May 31, 2006 indicates that a Treatment Authorization Request ("TAR") was approved on May 31, 2006 for "lesion excision for biopsy, surgical correction of glans penis for severe hypospadias and circumcision, and pertinent surgical f/u." The United States denies the remaining allegations in this Paragraph.

47. In response to Paragraph 47, the United States admits that a record dated June 7, 2006 indicates that Castaneda was seen by private Dr. John Wilkinson on June 7, 2006. The United States also admits that private Dr. Wilkinson's record dated June 7, 2006 indicates that "I agree with the physicians at the metropolitan correctional Center that this may represent either a penile cancer or a progressive viral based lesion. I strongly agree that it requires urgent urological assessment of biopsy and definitive treatment. In this extremely delicate area and there can be considerable morbidity from even benign lesions which are not promptly and appropriately treated. I would recommend that he return to see us only if he is found to have a neoplasm as the cause of his penile lesion. I've not found any correlation between penile cancers and vitiligo in a Medline search." The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

48. In response to Paragraph 48, the United States admits that private Dr. Wilkinson's record dated June 7, 2006 indicates that "no lymphadenopathy in anterior or posterior cervical chains, supraclavicular, axillary or inguinal regions." The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

49. In response to Paragraph 49, the United States admits that a record dated

June 7, 2006 indicates that Federal Defendant Dr. Esther Hui noted "[Private] Dr. Wilkinson called in regards to this patient who he saw in clinic today. This patient has a penile lesion that needs to be biopsied. He is not able to biopsy this lesion but offered to admit him to the hospital in order to assist in the coordination or care. Since this is an elective outpatient procedure, we decided that we would not admit him at this time." The United States denies the remaining allegations.

50. In response to Paragraph 50, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

51. In response to Paragraph 51, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

52. In response to Paragraph 52, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

53. The United States admits that Castaneda filed such a grievance as alleged in Paragraph 53.

54. In response to Paragraph 54, the United States admits that a record dated June 23, 2006 indicates that Castaneda saw Physician's Assistant Walker, and that Physician's Assistant Walker noted "Obvious slightly purulent drainage from foreskin of penis next to lesion on penis," and that "Pt states it is getting worse, more swelling to the area, foul odo[r], drainage, more difficult to urinate, bleeding from foreskin."

The United States denies the allegations in the last sentence in Paragraph 54.

55. In response to Paragraph 55, the United States admits that a record from private Dr. Wilkinson dated June 23, 2006 notes that "phone call from correctional facility, patient's foreskin lesion is increased in size and pressing further on his penis causing increasing discomfort. Patient to see [private] Dr. Robert Masters, M.D. urology. Copy of records sent to [private] Dr. Masters." The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

56. In response to Paragraph 56, the United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

57. In response to Paragraph 57, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

58. The United States admits the allegations in Paragraph 58.

59. In response to Paragraph 59, the United States admits that a record dated July 12, 2006 indicates that Castaneda was seen by Physician's Assistant Walker on July 12, 2006 and that Physician's Assistant Walker noted that "lesion on penis is draining clear, foul malodorous smell, cultured before were negative for growth. negative RPR, negative HIV. foreskin is bleeding at this time and pt states his colon feels swollen, previous rectal exam showed slightly swollen prostate, deferred today" and an "unk etiology of penial lesion."

60. In response to Paragraph 60, the United States admits that another record dated July 12, 2006 indicates that Physician's Assistant Walker noted that "Pt was not denied by Dr. Hui any treatment, albeit, there was no active Treatment Authorization Request (TAR) placed for approval by DIHS headquarters in Washington DC, nor was there an emergent need." The United States lacks sufficient information to either admit or deny the remaining allegations and therefore those allegations are denied.

61. In response to Paragraph 61, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

62. In response to Paragraph 62, the United States admits that a Treatment, Authorization, & Consultation Form dated July 13, 2006 indicates that authorized action was approved on July 13, 2006 for "ER evaluation and treatment 7-13-06." The United States denies the remaining allegations in this Paragraph.

63. In response to Paragraph 63, the United States admits that the Treatment, Authorization, & Consultation Form dated July 13, 2006 indicates "Spoke with [private] Dr. Wilkinson [] and [private] Dr. Masters [] who both strongly recommend admission, urology consultation, surgical intervention via biopsy/exploration under anesthesia to include circumcision if non-malignant, return f/u with oncology depending upon findings, and potential treatment or surgery if malignant findings." The United States lacks sufficient information to either admit or deny the remaining allegations in Paragraph 63 and therefore denies these allegations.

64. In response to Paragraph 64, the United States admits that a Treatment, Authorization, & Consultation Form dated July 13, 2006 indicates that authorized action was approved on July 13, 2006 for "ER evaluation and treatment 7-13-06." The United States also admits that the Treatment, Authorization, & Consultation Form dated July 13, 2006 indicates "There is now bleeding, drainage, malodorous smell and the lesion now appears to be 'exploding' for lack of better words, definitely macerated. Request for urology and oncology inpatient eval and treatment with outpatient follow-up."

65. In response to Paragraph 65, the United States admits that a record dated July 13, 2006 indicates that Castaneda was seen by private Dr. Juan Tovar at Scripps Mercy Chula Vista Hospital emergency room and that private Dr. Tovar noted "the

patient has a 1.5 x 2-cm fungating lesion with slight clearish discharge, but no sign of induration, no signs of abscess," that Castaneda "has no lymphadenopathy that [private Dr. Tovar] can appreciate," and that the impression was "Penile mass, rule out cancer, versus infectious etiology." The United States denies the remaining allegations in Paragraph 65.

66. In response to Paragraph 66, the United States admits that a record dated July 13, 2006 indicates that Castaneda was seen by non-federal Defendant Dr. Hunting at Scripps Mercy Chula Vista Hospital and that non-federal Defendant Dr. Hunting noted that Castaneda "has no other obvious lesions, nothing suspicious for carcinoma," that "this is condyloma" and recommended referring Castaneda "back to his primary treating urologist, who can do the elective program, which has been advised." The United States lacks sufficient information to either admit or deny the remaining allegations in Paragraph 66 and therefore denies these allegations.

67. In response to Paragraph 67, the United States admits that a record dated July 17, 2006 indicates that Castaneda was seen by Physician's Assistant Walker on July 17, 2006, and that Physician's Assistant Walker noted Castaneda had "growing lesion to penis with severe phimosis, bleeding, and clear drainage from lesion area with foul odor," noted that Physician's Assistant Walker had spoken to private Dr. Wilkinson and private Dr. Masters "who both strongly recommended admission, urology consultation, surgical intervention via biopsy/exploration under anesthesia to include circumcision if non-malignant, return f/u with oncology depending upon findings, potential treatment or surgery of any malignant findings."

68. In response to Paragraph 68, the United States admits that a record dated July 18, 2006 and authored by Physician's Assistant Walker indicates that "pt will be submitted for early release to further his opportunities for testing and potential treatment" and that Castaneda was not released at that time. The United State lacks sufficient information to either admit or deny the allegations in the last sentence in this Paragraph and therefore denies these allegations.

69. In response to Paragraph 69, the United States admits that a record dated July 26, 2006 indicates that Castaneda was seen by Physician's Assistant David Lusche ("Physician's Assistant Lusche") and that Physician's Assistant Lusche noted that he explained to Castaneda that "while a surgical procedure might be recommended long-term, that does not imply that the Federal Government is obligated to provide that surgery if the condition is not threatening to life, limb, or eyesight." The United States further admits the last sentence of Paragraph 69.

70. In response to Paragraph 70, the United States admits that CCA Inmate/Resident Grievance Form Number 06-135 filed by Castaneda against Physician's Assistant Lusche was received on July 28, 2006 and that Physician's Assistant Lusche noted on the form that "I have met with Mr. Castaneda + explained that the urologist informed us that surgery at this point is elective in nature. As such the Federal Government will not approve this (elective) surgery. We will continue to monitor Mr. Castaneda's status at his request using the sick call system."

71. In response to Paragraph 71, the United States admits that a record dated August 9, 2006 indicates that Castaneda was seen by Physician's Assistant Lusche on August 9, 2006 and that Physician's Assistant Lusche noted that "Foreskin inflamed and taught around glans penis d/t inflammation. Whitish growth approx. 8 mm diameter noted at inferior margin of foreskin. No discharge seen. Glans penis appears pink," and explained to Castaneda that "the urologist informed our staff that surgical removal of the foreskin, at the current time, would be considered elective surgery; that as such the Federal Government will not provide for such surgery." The United States also admits the allegations in the last sentence of Paragraph 71.

72. In response to Paragraph 72, the United States admits that a record dated August 10, 2006 indicates that a sick call slip was received on August 10, 2006 and that the sick call slip indicated "no complaints of any symptoms; used form to communicate 'I am requesting that I have a biopsy performed to see what my condition is.'" The United States also admits that a Treatment Authorization Request

dated August 11, 2006 was submitted by medical staff with reason for referral noted as "Biopsy lesion on Penis, surgical correction of glans penis" with provider of medical care listed as "[private] Dr. Robert Masters."

73. In response to Paragraph 73, the United States admits that a record dated August 22, 2006 indicates that Castaneda was taken to be seen by private Dr. Masters and that private Dr. Masters noted his impression that Castaneda had "Probable subprepucial condyloma accuminata," "diffuse vitiligo," and "Possible distal urethral condylomata," and that "The appropriate treatment for this problem would be circumcision. That would provide a biopsy and take care of the ongoing medical side effects of the lesion including infection and bleeding."

74. In response to Paragraph 74, the United States admits that private Dr. Master's report dated August 22, 2006 to Physician's Assistant Walker produced by Plaintiffs' counsel indicates "We will arrange for admission for circumcision at a local hospital. My principal hospital is Sharp Memorial."

75. In response to Paragraph 75, the United States admits that an undated notation states that "Spoke with Dr. Masters, Urologist, concerning his findings and diagnosis of the penial lesion, occasional bleeding and drainage, and urethral discomfort. According to Dr. Masters, this pt has condyloma acuminata like lesion to the foreskin of his penis that may or may not be growing into the urethra. There is a small hernia like area to the outer meatus and a phimosis due to the uncircumcized glans penis. Dr. Masters stated that elective procedures this patient may need in the future are cystoscopy and circumcision, the latter being first so as not to spread the condyloma into the urethra if it is not there already. He is not sure where the bleeding and drainage is coming from but suspects with cystoscopy this may be electively noted. This note can be found in patients electronic medical record." The United States denies the remaining allegations in this Paragraph.

76. In response to Paragraph 76, the United States admits that a record dated August 24, 2006 indicates that Castaneda was seen by Physician's Assistant Walker

and that Physician's Assistant Walker noted that he told Castaneda that "the urologist diagnosed [Castaneda] with a condyloma acuminata that if the patient desired to pursue on an elective basis, could undergo circumcision with a cystoscopy. [Castaneda] states he understands and wants to know if his surgery will be done while housed in this facility, and he was told according to policy, this would not occur. [Castaneda] states he will pursue upon release. Early release for medical reasons will be discussed with the medical team so that [Castaneda] may pursue treatment, surgery and f/u." The United States denies the allegations in the last sentence of this Paragraph.

77. In response to Paragraph 77, the United States admits that a record dated August 26, 2006 indicates that Castaneda was seen by medical staff on August 26, 2006 and that the medical staff noted that Castaneda "c/o stressful situation regarding medical status, unable to sleep @ night; states that ICE won't allow surgical operation for lesion on penis" and that Castaneda was given Diphenhydramine. The United States lacks sufficient information to either admit or deny the remaining allegations in Paragraph 77 and therefore denies these allegations.

78. In response to Paragraph 78, the United States admits that a record dated August 28, 2006 indicates that Castaneda was seen by medical staff on August 28, 2006 and that the medical staff noted that Castaneda stated "I have stress and can't sleep. I need medication," that "Pt indicates his stress is due to a chronic medical problem which the CCA has refused to have corrected as it is considered to be elective surgery," and that Castaneda was given Trazedone. The United States lacks sufficient information to either admit or deny the remaining allegations in Paragraph 78 and therefore denies these allegations.

79. In response to Paragraph 79, the United States admits that a memo dated August 30, 2006 from Federal Defendant Stephen Gonsalves addressed to Castaneda indicates that "This is to inform that the off-site specialist you were referred to for your medical condition reports that nay surgical intervention for the condition would

be elective in nature. An independent review by our medical team is in agreement with the specialist's assessment. The care you are currently receiving is necessary, appropriate and in accordance with out policies."

80. In response to Paragraph 80, the United States lacks sufficient information to either admit or deny the allegations and therefore denies the allegations.

81. The United States denies the allegations in Paragraph 81.

82. In response to Paragraph 82, the United States admits that a record dated September 8, 2006 indicates that Castaneda was seen by Registered Nurse Joanne Galano ("Nurse Galano") and that Nurse Galano noted that Castaneda stated "I have a lot pain and I'm having discharge," that ibuprofen had no effect, and that Castaneda stated he had "white discharge at night" and "It's like genital warts, but they're getting bigger."

83. In response to Paragraph 83, the United States admits that a record dated September 12, 2006 indicates that Castaneda was seen by Physician's Assistant Walker and that Physician's Assistant Walker noted that "pt states via sick call request he is having more penile lesion discharge and discomfort."

84. In response to Paragraph 84, the United States admits that a record dated September 14, 2006 indicates that Castaneda was seen by Registered Nurse Cindy Butler ("Nurse Butler") on September 14, 2006 and that Nurse Butler noted that Castaneda complained that "My situation is getting worst and worst! I'm suffering pain, I cannot sleep because of the pain. Also the discharge does not stop nor the bleeding. It smells really bad! States that the antibiotic prescribed two days ago is not effective now, nor has it ever been in the past." The United States denies the allegations in the last sentence of Paragraph 84.

85. In response to Paragraph 85, the United States admits that a record dated September 18, 2006 indicates that Castaneda's request for amoxicillin was denied on September 18, 2006.

86. In response to Paragraph 86, the United States admits that a record dated September 26, 2006 indicates that Castaneda was seen by Physician's Assistant Walker and that Physician's Assistant Walker noted that "another condyloma type lesion is forming and foul odo[r] emitting from uncircumcized area with mushroomed wart." The United States admits that Physician's Assistant Walker discussed with Castaneda the possible early release of Castaneda and that Castaneda was a "mandatory hold due to legal status." The United States denies the remaining allegations in this Paragraph.

87. In response to Paragraph 87, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

88. In response to Paragraph 88, the United States admits that a record dated October 17, 2006 indicates that on October 17, 2006, "CCA D control officer called and stated this detainee said he has blood coming out of his penis. CCA officer saw some dried blood on his boxers."

89. In response to Paragraph 89, the United States admits that a record dated October 23, 2006 indicates that Castaneda was seen by Physician's Assistant Walker on October 23, 2006 and that Physician's Assistant Walker noted that "TAR PLACED AND IS CURRENTLY PENDING REVIEW FOR SURGERY." The United States further admits that non-federal Defendant Mazur's record dated October 25, 2006 indicates that "Discussed with the DIHS Staff Physician. Circumcisions are not a covered benefit. Updated by Claudia Mazur, RN, CCM on Wednesday, October 25, 2006."

90. In response to Paragraph 90, the United States admits that TAR #20061019188300 indicates that "34 yo El Salvadoran male with 3 year history of genital wart on uncircumcized penis. Pt has developed a moderate sized condyloma

to the glans penis and another one is developing within the foreskin. Pt has subsequent infections, bleeding due to very tight foreskin, some dysuria buy has been functioning in the past, and foul odor but no sign of infection. Pt has been seen by local urologist and oncologist and both are not impressed or possible cancerous lesion(s), however, there is an elective component to having the circumcision completed. Pt has been submitting several requests for sick call that when evaluated there is not much else left to be done. Pt is demanding surgical treatment but is not able to be released to seek further care due to mandatory hold and according to ICE authorities, may be with this facility for quite a while." The United States denies the remaining allegations in this Paragraph.

91. In response to Paragraph 91, the United States admits that TAR #20061019188300 indicates that "Pt is demanding surgical treatment but is not able to be released to seek further care due to mandatory hold and according to ICE authorities, may be with this facility for quite a while." The United States denies the remaining allegations in this Paragraph.

92. In response to Paragraph 92, the United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

93. In response to Paragraph 93, the United States admits that a record dated November 9, 2006 indicates that Castaneda was seen by Nurse Butler and that Nurse Butler noted that Castaneda "States that his symptoms have worsened. State he feels a constant pinching pain, especially at night. States he constantly has blood discharge on his shorts. Also complains of a swollen rectum which he states make bowel movements hard[.] Can I get some of that milk of magnesia stuff?" The United States also admits that the same record dated November 9, 2006 indicates that Nurse Butler noted that Castaneda was "Informed that TAR in place for surgery and is pending approval," and Castaneda was prescribed milk of magnesia and docusate sodium. The United States lacks sufficient information to either admit or deny the

remaining allegations in Paragraph 93 and therefore denies these allegations.

94. In response to Paragraph 94, the United States admits that a record dated November 14, 2006 indicates that Castaneda was seen by Physician's Assistant Lusche on November 14, 2006 and that Physician's Assistant Lusche noted that "Patient complains of new, 2nd penile lesion on underside, distal penis. Patient complains his penile lesions stain his underwear [and] requests assistance to obtain more fresh underwear."

95. In response to Paragraph 95, the United States admits that a record dated November 15, 2006 indicates that Castaneda was seen by Physician's Assistant Lusche on November 15, 2006 and that Physician's Assistant Lusche noted that "Wart is white in color, moist in appearance, approx. 2.5 c.m. diameter," that Castaneda's "Underwear is stained in multiple areas of front, in color light pink," that Castaneda stated "he cannot stand and urinate, because the urine 'sprays everywhere' and he cannot direct the stream" and that Castaneda be issued a pair of clean boxers daily. The United States denies the allegations in the last sentence in this Paragraph.

96. In response to Paragraph 96, the United States admits that the Medical Summary of Federal Prisoner/Alien in Transit form signed by Nurse Butler on November 17, 2006 indicates that the date Castaneda departed from DIHS San Diego was November 17, 2006, listed Trazedone as Castaneda's medication and no current medical problems on the form.

97. In response to Paragraph 97, the United States admits the allegations.

98. In response to Paragraph 98, the United States admits that a record dated November 24, 2006 indicates that Castaneda was booked at the San Pedro SPC on November 24, 2006. The United States lacks sufficient information to either admit or deny the remaining allegations in Paragraph 98 and therefore denies these allegations.

99. In response to Paragraph 99, the United States admits that a Request for Medical Care slip dated December 1, 2006 indicates that Castaneda requested to see

a doctor regarding his "medical problem. Penis pain." The United States denies the remaining allegations in this Paragraph.

100. In response to Paragraph 100, the United States admits that a Request for Medical Care slip dated December 3, 2006 indicated that Castaneda had "lots of pain[,] bleeding[,] discharge from penis[,] need medical attention." The United States denies the remaining allegations in this Paragraph.

101. In response to Paragraph 101, the United States admits that a letter from the ACLU dated December 5, 2006 was addressed to Anthony Cerone and Federal Defendants Henneford, Molinar and Gonsalves, and non-federal Defendant Mazur. The letter speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies the remaining allegations in this Paragraph.

102. In response to Paragraph 102, the United States admits that TAR dated December 5, 2006 indicates "Requesting Urology consult with Lawrence Greenburg, MD,(310 832-2697) TBS. Has Hx of severe HPV infection causing large, painful penile warts. has bleeding and pain from the lesions. May also have an underlying structural deformity of penis. Reports filed case with 9th Circuit. Henneford." The United States denies that remaining allegations in this Paragraph.

103. In response to Paragraph 103, the United States admits that TAR #20061204687800 contains the quoted language alleged in this Paragraph.

104. In response to Paragraph 104, the United States denies the allegations in the first sentence of this Paragraph and lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

105. In response to Paragraph 105, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

106. In response to Paragraph 106, the United States lacks sufficient

information to either admit or deny these allegations and therefore denies these allegations.

107. In response to Paragraph 107, the United States denies these allegations.

108. In response to Paragraph 108, the United States admits that an email dated December 19, 2006 from Federal Defendant Molinar to Tom Jawetz contains the quoted language alleged in this Paragraph. The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

109. In response to Paragraph 109, the United States admits that a record dated December 26, 2006 indicates that Castaneda was seen by PA Shelly Hollandsworth on December 26, 2006 and that PA Hollandsworth noted that Castaneda "here for c/o blood coming from penis. States saw Dr. Greenburg a couple weeks ago and doesn't know the results of that appt." The United States denies the remaining allegations in this Paragraph.

110. In response to Paragraph 110, the United States admits that a record dated January 11, 2007 indicates that Castaneda was seen by PA Hollandsworth and that PA Hollandsworth noted "Knowledge deficit related to f/u." The United States also admits that another record dated January 11, 2007 indicates that Castaneda was seen by PA Danielle Didonna and that PA Didonna noted "return for status HPV infection, urology consult pended/denied? Pt was seen by [private] Urology Dr. Greenburg who recommends advanced urology specialty care. Pt must have a biopsy and further treatment recommendations made. Pt states he is in severe pain and BID tramadol not helping much," that "specialty eval with biopsy pending scheduled appt," and that "R/O Carcinoma of Penis secondary to HPV infection."

111. In response to Paragraph 111, the United States admits that a letter dated January 19, 2007 from a staff attorney with the ACLU was addressed to Norma Bonales-Garibei and Federal Defendants Henneford and Molinar, and non-federal Defendant Mazur. As for the remaining allegations in this Paragraph, they constitute

the characterizations of Plaintiffs' regarding the letter, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

112. In response to Paragraph 112, the United States admits that a record dated January 24, 2007 indicates that Castaneda was seen by Nurse Practitioner Brinkley and that Nurse Practitioner Brinkley noted that "Consulted with Dr. Collins, verbally approved TAR to see [private] Dr. Asghar Askari[.]"

113. In response to Paragraph 113, the United States admits that a record dated January 25, 2007 indicates that private Dr. Askari saw Castaneda on January 25, 2007 for a consultation and that private Dr. Askari noted that "Upon exam it revealed Fungating with penile lesion with poss left lymphadenectomy, most likely penile cancer," that Castaneda "should be scheduled for a penile Biopsy," and that private Dr. Askari's "office will get authorization and schedule this as an out-pt at the hospital under general anesthesia [sic]." The United States lacks sufficient information to either admit or deny the allegations in the last sentence of this Paragraph and therefore denies these allegations. The United States denies the remaining allegations in this Paragraph.

114. In response to Paragraph 114, the United States admits that a letter dated January 29, 2007 from the ACLU regarding Castaneda's medical treatment was addressed to Captain Jarres and Federal Defendant Dr. Shack. The United States admits that records indicate that a biopsy was approved for Castaneda. The United States denies the remaining allegations in this Paragraph.

115. In response to Paragraph 115, the United States denies these allegations.

116. In response to Paragraph 116, the United States admits that records from Harbor-UCLA indicate that Castaneda went to Harbor-ULA Hospital on or about February 8, 2007 and was admitted on or about February 13, 2007 with a diagnosis of squamous cell carcinoma of the penis. The United State lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and

therefore denies these allegations.

117. In response to Paragraph 117, the United States admits that Harbor-UCLA records indicate that Castaneda's penis was partially amputated on February 14, 2007.

118. In response to Paragraph 118, the United States admits that Harbor-UCLA records indicate that Castaneda's partial penectomy left Castaneda with a 2 c.m. stump and that the remaining 8 c.m. sample of his penis was sent to pathology which revealed that Castaneda had a keratinizing type of invasive squamous cell carcinoma.

119. In response to Paragraph 119, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

120. In response to Paragraph 120, the United States admits that it has been informed by Plaintiffs' counsel that Castaneda died of cancer on February 16, 2008. The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

121. In response to Paragraph 121, the United States admits that the DIHS Medical Dental Detainee Covered Services Package states that "The Division of Immigration Health Services (DIHS) provides health care benefits for persons in the custody of Immigration and Customs Enforcement (ICE) and Border Patrol (BP) that are in addition to the contracted minimum scope of services provided by a detention facility. This document is not meant to be interpreted as all inclusive; each request is reviewed by medical professionals on a case by case basis. The DIHS Medical Dental Detainee Covered Services Package primarily provides health care services for emergency care. Emergency care is defined as 'a condition that is threatening to life, limb, hearing, or sight.' Accidental or traumatic injuries incurred while in the custody of ICE or BP and acute illnesses will be reviewed for appropriate care. Other medical conditions which the physician believes, if left untreated during the period

of ICE/BP custody, would cause deterioration of the detainee's health or uncontrolled suffering affecting his/her deportation status will be assessed and evaluated for care. All health care services for which a claim for payment is submitted to DIHS require authorization. Elective, non emergent care requires prior authorization. DIHS must be notified of emergency care services within 24 business hours of occurrence. Requests for pre existing, non life threatening conditions, will be reviewed on a case by case basis. All medical service requests should have correlating clinical signs and symptoms. Detainee transfers from one hospital to another hospital require prior authorization, unless deemed an emergency. Transfers will usually be approved if the accepting facility is able to offer care/services not available at the original facility. Failure to submit a Treatment Authorization Request (TAR) for medical services within the time frames established by DIHS will result in payment denial. Providers may request an appeal of any denied service by the submission of an appeal letter." The United States denies the remaining allegations in this Paragraph.

122. In response to Paragraph 122, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

123. In response to Paragraph 123, the United States denies this allegation.

124. In response to Paragraph 124, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

125. In response to Paragraph 125, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United

States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

126. In response to Paragraph 126, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the September 5, 2008 deposition of Anthony Walker, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

127. In response to Paragraph 127, the United States denies this allegation.

128. In response to Paragraph 128, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

129. The United States denies the allegations in Paragraph 129.

130. The United States denies the allegations in Paragraph 130.

131 The United States denies the allegations in Paragraph 131. Furthermore, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the March 12, 2008 deposition of Federal Defendant Hui, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

132. The United States denies the allegations in Paragraph 132. Furthermore, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the March 12, 2008 deposition of Federal Defendant Hui, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations.

133. The United States denies the allegations in Paragraph 133.

134. The United States denies the allegations in the first sentence of Paragraph 134. Moreover, the United States lacks sufficient information to either admit or deny the allegations contained in the second sentence of this Paragraph and

therefore denies these allegations.

135. In response to Paragraph 135, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of the testimony of the March 12, 2008 deposition of Federal Defendant Hui, which transcript of the deposition speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies these allegations. Moreover, the third sentence in this Paragraph contains Plaintiffs' characterization of the facts and/or conclusions of law to which no response is required. To the extent a response is required, the United States denies these allegations.

136. The United States denies the allegations in Paragraph 136. Furthermore, this Paragraph contains allegations involving a party that has been dismissed, and therefore do not require a response. To the extent a response is required, the United States denies these allegations.

137. In response to Paragraph 137, the United States lacks sufficient information to either admit or deny the allegations that "while the number of detainees in ICE custody has tripled since 2001, the DIHS budget has only increased by 65%" and therefore denies these allegations. The remaining allegations in this Paragraph contain Plaintiffs' characterization of the facts and/or conclusions of law to which no response is required. To the extent a response is required, the United States denies these allegations.

138. In response to Paragraph 138, the first sentence in this Paragraph contains Plaintiffs' characterization of the facts and/or conclusions of law to which no response is required. To the extent a response is required, the United States denies these allegations. The United States lacks sufficient information to either admit or deny the allegations in the second sentence of this Paragraph and therefore denies these allegations.

139. In response to Paragraph 139, the United States admits the allegations in the first sentence. The remaining allegation in this Paragraph contains Plaintiffs'

characterization of the facts and/or conclusions of law to which no response is required. To the extent a response is required, the United States denies these allegations.

140. In response to Paragraph 140, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

141. The United States denies the allegations in Paragraph 141.

142. In response to Paragraph 142, the United States admits that an email dated July 28, 2006, 2:26 a.m., was sent from David Lusche to Anthony Walker. As for the remaining allegations in this Paragraph, they constitute the characterizations of Plaintiffs' regarding the email, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

143. In response to Paragraph 143, the United States admits that an email dated July 28, 2006, 2:26 a.m., was sent from David Lusche to Anthony Walker. As for the remaining allegations in this Paragraph, they constitute the characterizations of Plaintiffs' regarding the email, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

144. In response to Paragraph 144, the United States admits that an email dated July 29, 2006, 10:01 a.m., was sent from Anthony Walker to David Lusche. As for the remaining allegations in this Paragraph, they constitute the characterizations of Plaintiffs' regarding the email, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

145. In response to the last sentence in Paragraph 145, the United States admits that on April 24, 2008, the United States filed "DEFENDANT UNITED STATES OF AMERICA'S NOTICE OF ADMISSION OF LIABILITY FOR

MEDICAL NEGLIGENCE" which stated "Defendant United States of America admits liability on plaintiffs' claims for medical negligence brought under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671 et seq.), as alleged in the first cause of action of plaintiff's Second Amended Complaint. By doing so, the United States admits only negligence and causation on the first cause of action and does not admit either the nature or extent of plaintiffs' claims for damages." The United States denies all remaining allegations in this sentence.

146. In response to the first two sentences of Paragraph 146, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations. The United States admits the allegations in the last sentence of this Paragraph.

147. The United States denies the allegations in Paragraph 147.

148. In response to Paragraph 148, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

149. In response to Paragraph 149, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

150. In response to Paragraph 150, the United States admits that an email dated July 20, 2007, 10:18 p.m., was sent from Federal Defendant Hui to Federal Defendant Shack. As for the remaining allegations in this Paragraph, they constitute the characterizations of Plaintiffs' regarding the email, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

151. In response to Paragraph 151, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

152. In response to Paragraph 152, the United States lacks sufficient

information to either admit or deny these allegations and therefore denies these allegations.

153. In response to Paragraph 153, the United States admits the allegations in the first sentence of this Paragraph. The United States denies the allegation that LaMont W. Flanagan is the new director of DIHS. The United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations. Moreover, the remaining allegations in this Paragraph contain Plaintiffs' characterization of the facts and/or conclusions of law to which no response is required. To the extent a response is required, the United States denies these allegations.

154. In response to Paragraph 154, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

155. In response to Paragraph 155, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

156. In response to Paragraph 156, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

157. In response to Paragraph 157, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

158. In response to Paragraph 158, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

159. In response to Paragraph 159, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

160. In response to Paragraph 160, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

161. In response to Paragraph 161, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

162. In response to Paragraph 162, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

163. In response to Paragraph 163, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

164. In response to Paragraph 164, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

165. In response to Paragraph 165, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

166. In response to Paragraph 166, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

167. The United States denies the allegations in Paragraph 167.

168. In response to Paragraph 168, the United States admits that a chart labeled “TAR Cost Savings Based on Denials” exists. As for the remaining allegations in this Paragraph, they constitute the characterizations of Plaintiffs’ regarding the chart, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

169. In response to Paragraph 169, the United States denies the allegations in the first sentence of this Paragraph. The United States admits that a chart labeled "TAR Cost Savings Based on Denials" exists. As for the remaining allegations in this Paragraph, they constitute the characterizations of Plaintiffs' regarding the chart, which document speaks for itself and is the best evidence of its contents. To the extent that a response is required, the remaining allegations of this Paragraph are denied.

170. In response to Paragraph 170, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

171. In response to Paragraph 161, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

172. In response to Paragraph 172, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

173. In response to Paragraph 173, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

174. In response to Paragraph 174, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of DHS Office of Inspector General (OIG) December 2006 Audit Report, which speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies the allegations in this Paragraph.

175. In response to Paragraph 175, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of DHS Office of Inspector General (OIG) December 2006 Audit Report, which speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies the

allegations in this Paragraph.

176. In response to Paragraph 176, the United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

177. In response to Paragraph 177, the United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

178. In response to Paragraph 178, the United States lacks sufficient information to either admit or deny the remaining allegations in this Paragraph and therefore denies these allegations.

179. In response to Paragraph 179, the allegations contained in this Paragraph constitute Plaintiffs' characterizations of DHS Office of Inspector General (OIG) December 2006 Audit Report, which speaks for itself and is the best evidence of its contents. To the extent a response is required, the United States denies the allegations in this Paragraph.

180. The United States denies the allegations in Paragraph 180.

181. The United States denies the allegations in Paragraph 181.

182. The United States denies the allegations in Paragraph 182.

183. The United States denies the allegations in Paragraph 183.

184. In response to Paragraph 184, the United States incorporates by reference herein its responses to the preceding Paragraphs.

185. In response to Paragraph 185, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary the United States denies these allegations.

186. Paragraph 186 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more

than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

187. In response to Paragraph 187, the United States admits that on April 24, 2008, the United States filed "DEFENDANT UNITED STATES OF AMERICA'S NOTICE OF ADMISSION OF LIABILITY FOR MEDICAL NEGLIGENCE" which stated "Defendant United States of America admits liability on plaintiffs' claims for medical negligence brought under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b) and 2671 et seq.), as alleged in the first cause of action of plaintiff's Second Amended Complaint. By doing so, the United States admits only negligence and causation on the first cause of action and does not admit either the nature or extent of plaintiffs' claims for damages." The United States denies all remaining allegations in this Paragraph.

188. The United States denies the allegations in Paragraph 188.

189. The United States denies the allegations in Paragraph 189.

190. In response to Paragraph 190, the United States incorporates by reference herein its responses to the preceding Paragraphs.

191. In response to Paragraph 191, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

192. Paragraph 192 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

193. The United States denies the allegations in Paragraph 193.

194. The United States denies the allegations in Paragraph 194.

195. The United States denies the allegations in Paragraph 195.

196. In response to Paragraph 196, the United States incorporates by reference herein its responses to the preceding Paragraphs.

197. In response to Paragraph 197, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

198. Paragraph 198 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

199. The United States denies the allegations in Paragraph 199.

200. The United States denies the allegations in Paragraph 200.

201. The United States denies the allegations in Paragraph 201.

202. In response to Paragraph 202, the United States incorporates by reference herein its responses to the preceding Paragraphs.

203. In response to Paragraph 203, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

204. Paragraph 204 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

205. The United States denies the allegations in Paragraph 184.

206. The United States denies the allegations in Paragraph 185.

207. The United States denies the allegations in Paragraph 186.

208. In response to Paragraph 208, the United States incorporates by reference herein its responses to the preceding Paragraphs.

209. In response to Paragraph 209, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

210. Paragraph 210 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

211. The United States denies the allegations in Paragraph 211.

212. The United States denies the allegations in Paragraph 212.

213. The United States denies the allegations in Paragraph 213.

214. In response to Paragraph 214, the United States incorporates by reference herein its responses to the preceding Paragraphs.

215. In response to Paragraph 215, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

216. Paragraph 216 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

217. The United States denies the allegations in Paragraph 217.

218. The United States denies the allegations in Paragraph 218.

219. The United States denies the allegations in Paragraph 219.

220. In response to Paragraph 220, the United States incorporates by reference herein its responses to the preceding Paragraphs.

221. In response to Paragraph 221, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

222. Paragraph 222 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

223. The United States denies the allegations in Paragraph 223.

224. The United States denies the allegations in Paragraph 224.

225. The United States denies the allegations in Paragraph 225.

226. The United States denies the allegations in Paragraph 226.

227. The United States denies the allegations in Paragraph 227.

228. In response to Paragraph 228, the United States incorporates by reference herein its responses to the preceding Paragraphs.

229. In response to Paragraph 229, this contains a jurisdictional or conclusory statement that does not require a response. To the extent a response is necessary, the United States denies these allegations.

230. Paragraph 230 contains conclusions of law to which no response is required. To the extent that a response is required, the United States admits only that Castaneda presented an administrative tort claim to the Department of Health and Human Services, within the meaning of the Federal Tort Claims Act, and that more than six months elapsed between the presentation of such claim and the filing of this Complaint. The United States denies all other allegations in this Paragraph.

231. The United States denies the allegations in Paragraph 231.

232. The United States denies the allegations in Paragraph 232.

233. The United States denies the allegations in Paragraph 233.

234 to 285. The United States does not respond to the allegations involving other Defendants alleged in Paragraphs 234 through 285. To the extent a response is required, the United States lacks sufficient information to either admit or deny these allegations and therefore denies these allegations.

The last two Paragraphs on pages 56 – 57 of the Fourth Amended Complaint contain Plaintiffs' Jury Trial Demand and Prayer for Relief and as such requires no response. Insofar as a response is required, the United States denies these allegations.

Any allegations to which a response is deemed necessary and which have not been admitted, denied, or otherwise responded to herein, are hereby denied.

In further answer to Plaintiffs' Fourth Amended Complaint, the United States alleges as follows:

**FIRST AFFIRMATIVE DEFENSE**

With the exception of the First Cause of Action, the United States and its agents and employees exercised due care and diligence and met the standard of care in this community with respect to the medical care and treatment Castaneda received from the United States and which Plaintiffs have made the basis for this action. No negligent or wrongful act of the United States, or any of its employees or agents while acting in the scope of their employment with the United States, was the actual or proximate cause or in any way contributed to, the injuries, damages or losses allegedly sustained by Castaneda or Plaintiffs. If any such negligent or wrongful act or omission is found to have existed, the United States alleges that its damages should be diminished in proportion to the amount of fault attributable to Castaneda and any other party.

**SECOND AFFIRMATIVE DEFENSE**

Castaneda was fully informed of the risks and knew the hazards involved in the medical treatment rendered to Castaneda by the United States and voluntarily

consented thereto, thereby assuming all of the said risks and thereby becoming the proximate/legal cause of any injury, damage, or loss to Castaneda and/or Plaintiffs.

**THIRD AFFIRMATIVE DEFENSE**

Any injury, damage or loss suffered by Castaneda and/or Plaintiffs was caused by the negligent or willful failure of Castaneda to follow the advice, instructions and orders of attending physicians, nurses and other medical personnel and in otherwise failing to exercise ordinary care on Castaneda's own behalf.

**FOURTH AFFIRMATIVE DEFENSE**

Any injury, damage or loss suffered by Castaneda was caused by a failure of Castaneda to use reasonable means to prevent aggravation of Castaneda's condition and to use reasonable means to mitigate damages to Castaneda.

**FIFTH AFFIRMATIVE DEFENSE**

Any injury, damage or loss suffered by Castaneda was actually and proximately caused, compounded or created by Castaneda's medical conditions and by occurrences or incidents prior and/or subsequent to any medical care and treatment provided to Castaneda by the United States, and the United States is not liable for said pre-existing, intervening and/or superseding medical conditions, occurrences or incidents. The United States and its health-care providers are not liable for professional negligence or malpractice for any occurrence or results solely on the basis that the occurrence or result was caused by the natural course of a disease process or condition, or was the natural or expected result of reasonable treatment rendered for the disease process or condition.

**SIXTH AFFIRMATIVE DEFENSE**

Any damages, injuries or losses suffered by Castaneda was actually and proximately caused, compounded, aggravated or created by the independent, pre-existing, intervening or superseding acts or omissions of a third party or parties or were so caused by the contributory negligence of Castaneda and the above said third party or parties' acts or omissions. To the extent Castaneda's and/or Plaintiffs'

alleged damages were so caused in whole or in part, then should the United States be found in any way liable in this matter, the United States's liability for Castaneda's and/or Plaintiffs' non-economic damages should be allocated to the United States in direct proportion to the United States's percentage of fault, if any.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' action against the United States shall be tried by the Court pursuant to 28 U.S.C. § 2402.

**EIGHTH AFFIRMATIVE DEFENSE**

Pursuant to California Civil Code § 3333.1, the United States may elect to introduce evidence of any amount(s) paid or payable to or for Plaintiffs as a benefit or collateral benefit as a result of the injury or injuries, damages or losses alleged in this action. The United States is not liable for payment or reimbursement to any payor, by way of payor's subrogation to the rights of the Plaintiffs or otherwise, for payor's payment of said benefits to Plaintiffs.

**NINTH AFFIRMATIVE DEFENSE**

The Complaint fails to state facts sufficient to constitute a cause of action.

**TENTH AFFIRMATIVE DEFENSE**

The United States is entitled to any offset or credit for any and all benefits or collateral benefits paid or payable to or for Plaintiffs for the injuries, damages or losses which payment was made by the United States or funded by the United States through a state, county or city government or other governmental entity.

**ELEVENTH AFFIRMATIVE DEFENSE**

In the event that the United States should be found liable to the Plaintiffs (which supposition is denied and merely stated for the purpose of this affirmative defense), the United States may elect to have future damages, if in excess of the amount specified in California Code of Civil Procedure § 667.7, paid in whole or in part as provided under that section.

///

**TWELFTH AFFIRMATIVE DEFENSE**

In the event that the United States should be found liable to Plaintiffs (which supposition is denied and merely stated for the purpose of this affirmative defense), the damages for non-economic losses shall not exceed the amount specified in California Civil Code § 3333.2(b).

**THIRTEENTH AFFIRMATIVE DEFENSE**

Liability, if any, for all non-economic damages shall be allocated in direct proportion to each tortfeasor's percentage of fault pursuant to California Civil Code § 1431, *et seq*.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' damages, if any, are limited to the amount originally stated or specified in Castaneda's administrative claim, if any.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Attorney's fees are taken out of any judgment or settlement and shall not exceed 25 percent of said amount. *See* 28 U.S.C. § 2678.

**SIXTEENTH AFFIRMATIVE DEFENSE**

The Federal Defendants were at all times acting pursuant to their lawful authority.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

No wrongful act or omission of any federal employee of the United States caused or in any way contributed to the injury and losses alleged by Plaintiffs.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs cannot recover punitive damages against the United States. *See* 28 U.S.C. § 2674.

**NINETEENTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to an award of pre-judgment interest, costs or disbursements as to the United States pursuant to 28 U.S.C. §§ 2674 and 2678.

///

WHEREFORE, the United States prays for judgment as follows:

1. That judgment be entered for the United States and against Plaintiffs;

2. That Plaintiffs' Fourth Amended Complaint and action be dismissed in its entirety as to the United States;

3. That the United States be awarded costs and disbursements in this action; and

4. That the United States be awarded such other and further relief as this Court may deem appropriate.

Dated: August 10, 2009

Respectfully submitted,
THOMAS P. O'BRIEN
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

//s//
KEITH STAUB
ANOIEL KHORSHID
Assistant United States Attorneys

Attorneys for the United States of America