O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO CASTANEDA,<br><br>              Plaintiff,<br><br>     v.<br><br>THE UNITED STATES OF AMERICA, ~~CALIFORNIA,~~ GEORGE MOLINAR, in his individual capacity, ~~CHRIS HENNEFORD, in his individual capacity,~~ ~~JEFF BRINKLEY, in his individual capacity,~~ ~~GENE MIGLIACCIO, in his individual capacity,~~ ~~TIMOTHY SHACK, M.D., in his individual capacity,~~ ESTHER HUI, M.D., in her individual capacity, et al.,<br><br>              Defendants. | Case No. CV 07-07241 DDP (JCx)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

   Presently before the court is Defendant Robert Mekemson ("Dr. Mekemson") and Susan Pasha ("Nurse Pasha")'s Motion for Summary Judgment. Having reviewed the parties' moving papers and heard oral argument, the court denies the motion and adopts the following order.

## I. Background

The facts of this case are known to the parties, and are more fully described in this court's previous orders. Accordingly, the court will only explain the facts here as necessary.

In December 2005, Francisco Castaneda ("Castaneda") was incarcerated at California's North Kern State Prison. During a medical screening on December 8, 2005, Dr. Andrew Leong found a lesion on Castaneda's penis. Dr. Leong recommended that Castaneda see a urologist and obtain a circumcision. On December 27, Dr. Leong observed discolorations on Castaneda's penis, a constriction of the foreskin, and a foul smell. Dr. Leong filled out a "Physician Request for Services form." On the form, Dr. Leong wrote "rule out squamous cell [carcinoma]" and requested that Castaneda consult with a urologist. Dr. Leong marked the request as "Routine," rather than urgent or emergent, but marked the request form "ASAP – 1 - 2 weeks."

Roughly two weeks later, on January 11, 2006, Dr. Mekemson, in his capacity as Chief Medical Officer of the North Kern State Prison, reviewed Dr. Leong's request. Dr. Mekemson observed that Castaneda was scheduled to be transferred to a different facility the following day, January 12. Dr. Mekemson believed that Castaneda would receive a medical screening at the new facility, and therefore denied the request for a urology consultation.

Nurse Pasha examined Castaneda on February 7, 2006. Nurse Pasha observed a raised, white-yellow lesion on Castaneda's penis. Nurse Pasha filled out a Physician Request for Services Form. On the form, Nurse Pasha wrote, "Rule out squamous cell [carcinoma]." Nurse Pasha requested a urology consultation, marked the request

"Urgent," and noted that Castaneda should make a follow-up visit in one month. One month later, on March 7, Castaneda had not yet received a urology consultation. Nurse Pasha again planned to follow up after one month. Castaneda was scheduled for a urology consultation on March 29, 2006, but was released into federal custody on March 26, 2006, three days before his urology appointment.

Castaneda was later diagnosed with penile cancer. Despite having his penis amputated, Castaneda died from cancer in February 2008. In the instant case, Plaintiffs allege that Dr. Mekemson and Nurse Pasha (collectively, "Defendants") were deliberately indifferent to Castaneda's medical needs, in violation of the Eighth Amendment. Plaintiffs also bring a wrongful death claim under California State Law.

In a related state-court action, Plaintiffs sought to hold the State of California liable for Defendants' actions. In 2010, a jury returned a verdict against the State for over $1.7 million. The State appealed, and in 2013, the California Court of Appeal reversed the judgment. Castaneda v. Dep't of Corr. and Rehab., 212 Cal. App. 4th 1051 (2013). In relevant part, the Court of Appeal held that the State can only be held liable for failure to summon medical care, not for malpractice in providing that care. Castaneda, 212 Cal. App. 4th at 1070. Because the State did examine and treat Castaneda to some extent, the Court of Appeal concluded that the State did not fail to summon medical care, and that the State is therefore immune from liability for Castaneda's injuries. Id. at 1074.

1    Defendants now move for judgment on the pleadings in the case
2 before this court.  Defendants contend that the California Court of
3 Appeal's decision in Castaneda bars the claims here as res
4 judicata.

## II. Legal Standard

6    A party may move for judgment on the pleadings "[a]fter the
7 pleadings are closed [] but early enough as not to delay the
8 trial." Fed. R. Civ. P. 12(c).  Judgment on the pleadings is
9 proper when the moving party clearly establishes that no material
10 issue of fact remains to be resolved and that it is entitled to
11 judgment as a matter of law.  Hal Roach Studios, Inc. v. Richard
12 Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990; Doleman v. Meiji
13 Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984).  The
14 standard applied on a Rule 12(c) motion is essentially the same as
15 that applied on a Rule 12(b)(6) motion to dismiss for failure to
16 state a claim, with the court accepting all of the non-moving
17 party's allegations as true.  Lyon v. Chase Bank USA, N.A., 656
18 F.3d 877, 883 (9th Cir. 2011).

## III. Discussion

20    A federal court must "give the same preclusive effect to a
21 state-court judgment as another court of that State would give."
22 Gathright v. City of Portland, 439 F.3d 573, 580 (9th Cir. 2006)
23 (quotation and citation omitted); 28 U.S.C. § 1738.  In California,
24 the doctrine of res judicata bars claims that are 1) identical to a
25 claim raised in a prior proceeding that (2) resulted in a final
26 judgment on the merits against (3) the same parties or their
27 privies.  Boeken v. Philip Morris USA, Inc., 48 Cal.4th 788, 797
28 (2010); Sargon Enters., Inc. v. Univ. of S. California, 215 Cal.

1  App. 4th 1495, 1508 (2013).  The claim preclusion aspect of res
2  judicata "operates as a bar to the maintenance of a second suit
3  between the same parties on the same cause of action."  <u>Boeken</u>, 48
4  Cal. 4th at 797.

5       "Unlike the federal courts, which apply a 'transactional
6  nucleus of facts' test, California courts employ the 'primary
7  rights' theory to determine what constitutes the same cause of
8  action for preclusion purposes."  <u>Brodheim v. Cry</u>, 584 F.3d 1262,
9  1268 (9th Cir. 2009) (internal quotations and citation omitted).
10 Under this theory, "the determinative factor is the harm suffered."
11 <u>Boeken</u>, 48 Cal.4th at 797.  "The cause of action is the right to
12 obtain redress for a harm suffered, regardless of the specific
13 remedy sought or the legal theory . . . advanced."  <u>Id.</u>  "Hence, a
14 judgment for the defendant is a bar to the subsequent action by the
15 plaintiff based on the same injury to the same right, even though
16 he presents a different [l]egal ground for relief."  <u>Slater v.
17 Blackwood</u>, 15 Cal.3d 791, 795 (1975) (quotation marks and citation
18 omitted); <u>See also</u> <u>Branson v. Sun-Diamond Growers</u>, 24 Cal. App. 4th
19 327, 341 (1994) ("[I]f the facts alleged show one primary right of
20 the plaintiff, and one wrong done by the defendant which involves
21 that right, the plaintiff has stated but a single cause of action,
22 no matter how many forms of kinds of relief he may claim . . . ."
23 (quotation marks and citation omitted)).

24      Defendants argue that both the instant suit and the state
25 court matter share "one cause of action based on Francisco
26 Castaneda's death."  (Reply at 5.)  "But a plaintiff's primary
27 right is defined by <u>the legally protected interest</u> which is harmed
28 by defendant's wrongful act, and is not necessarily coextensive

5

with the consequence of that wrongful act." Henderson v. Newport-Mesa Unified Sch. Dist., 214 Cal. App. 4th 478, 499 (2013) (emphases original); Boeken, 48 Cal.4th at 804 ("[W]e reject the assertion . . . that the primary right at issue in a wrongful death action is necessarily defined in terms of the death of the decedent.").

Plaintiffs filed their state suit under California's Government Tort Claims Act. Under California Government Code § 845.6, the state and its employees are immune from liability "for failure to furnish or obtain medical care" for a prisoner. See also Cal. Gov. Code § 844.6. There is a statutory exception to that immunity, however, "if the [public] employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov. Code § 845.6. Plaintiffs only named the State of California as a defendant, and did not bring state claims against Doctor Mekemson or Nurse Pasha.

As the California Court of Appeal explained, "Section 845.6 is very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employees' malpractice in providing that care." Castaneda, 212 Cal. App. 4th at 1070. Seeking to avail themselves of that limited waiver, Plaintiffs contended that Defendants failed to summon care by failing to ensure that Castaneda received a biopsy or urology consultation. Id. at 1072-73. Critically, however, the California Court of Appeal concluded that a public employee's duty to summon immediate medical care is separate and distinct from that employee's duty,

1  "once summoned," to provide any particular standard of care. <u>Id.</u>
2  at 1072, 1074.  Looking to the evidence at trial, the court further
3  held that, regardless whether Defendants breached their duty to
4  provide adequate medical care, Plaintiffs could not show a breach
5  of the separate duty to summon care because Castaneda received
6  medical treatment in the form of the assessments by Dr. Leong and
7  Defendant Pasha.  <u>Id.</u> at 1072.  Plaintiffs having failed to
8  demonstrate any violation of the duty to summon, and absent any
9  claim regarding the separate duty to provide adequate medical care,
10 the Court of Appeal reversed the judgment in favor of Plaintiffs.
11 <u>Id.</u> at 1075.
12      Put simply, the state court held that whatever harm Castaneda
13 suffered with respect to the care he received had no bearing on
14 whether he was harmed by a denial of care in the first instance.
15 In so concluding, the state court necessarily reasoned that
16 malpractice claims and failure to summon claims are different.
17 While the state court opinion has preclusive effect on duty to
18 summon issues, it acknowledged, but did not address, the separate
19 primary right implicated by the medical malpractice issues in the
20 instant federal case.  Because the two suits are predicated upon
21 different causes of action, res judicata does not apply.

26 ///
27 ///
28 ///

**IV. Conclusion**

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings is DENIED.

IT IS SO ORDERED.

Dated: September 24, 2013

DEAN D. PREGERSON
United States District Judge